MILES & STOCKBRIDGE P.C.
Joel L. Perrell Jr., Esq.
Kristen M. Siracusa, Esq.
100 Light Street
Baltimore, Maryland 21202
Tel: (410) 727-6464
Fax: (410) 385-3700
jperrell@milesstockbridge.com
ksiracusa@milesstockbridge.com

*Attorneys for Presidential Bank, FSB*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:

                                         Chapter 11

BNOIS SPINKA,                           Case No.: 15-43251 (NHL)

               Debtor.                  **Hearing Date: August 12, 2015, at 2:30 p.m.**
------------------------------------------------------------x

**MOTION OF PRESIDENTIAL BANK, FSB FOR AN ORDER PROHIBITING**
**DEBTOR'S UNAUTHORIZED USE OF CASH COLLATERAL**

      Presidential Bank, FSB ("Presidential") by and through its undersigned counsel, hereby files this motion seeking an Order from this Honorable Court prohibiting the use of its cash collateral by Bnois Spinka (the "Debtor"), absent an Order of this Court or the prior written consent of Presidential (the "Motion"). Presidential's loan with the Debtor is secured by properly perfected liens on, among other things, the Debtor's Real Property (defined below) and all of the Debtor's leases, rents, goods, inventory, accounts, equipment, furniture, fixtures, chattel paper, instruments, money and general intangibles, and all cash or noncash proceeds thereof (the "Cash Collateral"). At a minimum, Presidential is entitled to adequate protection of its interest in the Cash Collateral, including the proceeds of its collateral collected by the Debtor. In support of this Motion, Presidential states as follows:

## Introduction

1. The Debtor has failed to make any payments to Presidential for almost two and one half years. The Debtor has failed to provide any financial reporting to Presidential for an even longer period. It was not until the filing of this case that the Debtor provided some insight into its financial turmoil. It is apparent that Presidential was not the only creditor not being paid. The Debtor admittedly has been generating revenues from sources such as donations, tuition and membership fees over the years—all of which constitute Presidential's collateral as described herein. At the same time, the Debtor has accumulated a monumental amount of debt from operations (including $3.8 Million admitted to be owed to unsecured creditors, $260,000 in unpaid wages, and an additional $893,000 in accounts payable). The Debtor now projects itself to be profitable (at least in the short term) according to its profit & loss projection for month one of this bankruptcy case. The Debtor's first day disclosures create more questions than answers—including why the Debtor fails to include projected revenues from its summer camps when, as here, we are squarely within the summer months. Further dissipation of Presidential's cash collateral should not be sanctioned by this Court, absent a detailed accounting, segregation of cash, and adequate protection.

## Jurisdiction and Venue

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 363.

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. This matter constitutes a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (M).

**Parties**

5. The Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on July 16, 2015 (the "Petition Date"). Upon information and belief, the Debtor is a corporation formed pursuant to Article 10 of the Religious Corporation law of the State of New York. The Debtor owns, among other property, a religious facility located at 123-127 Wallabout Street, Brooklyn, New York (the "Synagogue") and a 32 acre summer camp located at 5405 State Route 42, Fallsburg, New York, in Sullivan County (the "Summer Camp", and together with the Synagogue, the "Real Property"). According to the Debtor's voluntary petition filed in this case (Doc. No. 1), the Debtor purports to own additional real property, namely 795 Kent Avenue, Brooklyn, New York.

6. Presidential is a financial institution located at 4600 East-West Highway, Bethesda, Maryland and made a prepetition loan to the Debtor as more particularly described herein.

**Factual Background**

*History of the Debtor's Obligations to Presidential*

7. Presidential is a secured creditor of the Debtor pursuant to certain written agreements, documents and instruments executed in connection with the indebtedness owed by the Debtor to Presidential as of the Petition Date. Specifically, on March 26, 2007 the Debtor and Presidential entered into that certain Loan Agreement (the "2007 Agreement"), whereby Presidential agreed to loan up to $3,075,000.00 (the "2007 Loan") to the Debtor for the purpose of financing the acquisition of the Summer Camp. The 2007 Loan was evidenced by that certain Mortgage Note (the "2007 Note") dated March 26, 2007 in the original principal amount of $3,075,000.00 and executed by the Debtor in favor of Presidential.

8. The obligations of the Debtor under the 2007 Note are secured by, among other things, that certain Mortgage and Security Agreement dated March 26, 2007 under which the Debtor granted to Presidential a security interest in the Summer Camp and, as additional collateral security, a security interest in the Synagogue (the "2007 Mortgage"). The obligations of the Debtor under the 2007 Note were also secured by that Certain Assignment of Leases and Rents dated March 26, 2007 executed by the Debtor in favor of Presidential (the "2007 Assignment"), which was subsequently cancelled by Presidential on October 29, 2009 as part of a consolidation of loan described below.

9. The Debtor defaulted under the Loan Documents and Presidential agreed to enter into that certain Amended and Restated Forbearance Agreement dated July 15, 2009 (the "Forbearance Agreement"). In connection with the Forbearance Agreement, the Debtor also sought additional financing from Presidential in order to finance certain improvements at the Summer Camp and to pay certain past due obligations owed to Presidential.

10. Presidential agreed to advance an additional $200,000 to the Debtor (the "2009 Loan") as evidenced by that certain Demand Note dated October 29, 2009 (the "2009 Note"). The obligations of the Debtor under the 2009 Note are secured by that certain Mortgage and Security Agreement dated October 29, 2009 under which the Debtor granted to Presidential a security interest in the Real Property (the "2009 Mortgage").

*Consolidation of the Debtor's Obligations to Presidential*

11. On October 29, 2009, the 2007 Note and the 2009 Note were consolidated pursuant to the terms of that certain Consolidation, Modification and Extension Agreement dated October 29, 2009 by and between the Debtor and Presidential, as evidenced by that certain

Consolidated Note dated October 29, 2009 in the original principal amount of $3,216,788.44 (the "Note"). A true and correct copy of the Note is attached hereto as **Exhibit A**.

12. The Note is secured by, among other things that certain Consolidation Mortgage and Security Agreement dated October 29, 2009 under which the Debtor granted to Presidential a security interest in the Real Property (the "Mortgage"). The Mortgage was recorded in the Sullivan County Clerk's Office on September 16, 2010 as instrument number 2010-58140 and also recorded or filed in the Office of the City Register of the City of New York on November 20, 2009 as City Register File Number 2009000382746. True and correct copies of the Mortgages, as recorded, are attached hereto as **Exhibit B** and **Exhibit C**, respectively, and incorporated herein by reference.

13. The Note is further secured by those certain Assignments of Leases and Rents dated October 29, 2009 under which the Debtor assigns, transfers, and sets over to Presidential all of its right, title and interest in and to all leases and rents derived from the Summer Camp (the "Summer Camp Assignment") and the Synagogue (the "Synagogue Assignment"). The Summer Camp Assignment was recorded in the Sullivan County Clerk's Office on September 16, 2010 as instrument number 2010-58141 and the Synagogue Assignment was recorded or filed in the Office of the City Register of the City of New York on November 20, 2009 as City Register File Number 2009000382747. True and correct copies of the Summer Camp Assignment and the Synagogue Assignment are attached hereto as **Exhibit D** and **Exhibit E**, respectively, and incorporated herein by reference.

14. The Note is further secured by that certain Security Agreement dated October 29, 2009 between the Debtor and Presidential (the "Security Agreement") under which the Debtor granted Presidential a security interest in all personal property of the Debtor. A true and correct

copy of the Security Agreement is attached hereto as **Exhibit F** and incorporated herein by reference.

15. Presidential perfected its liens on and security interests in the foregoing assets by filing the following UCC-1 Financing Statements with the State of New York Department of State (the "Financing Statements"):

    a. UCC-1 Financing Statement Filing Number 200704130294305 filed on April 13, 2007 as to the Synagogue, and continued by Filing Number 201202130090045 filed on February 13, 2012;

    b. UCC-1 Financing Statement Filing Number 200704130294280 filed on April 13, 2007 as to the Summer Camp, and continued by Filing Number 201201310061521 filed on January 31, 2012.

True and correct copies of the Financing Statements are attached hereto as **Exhibit G** and **Exhibit H**, respectively, and incorporated herein by reference.

16. Collectively, the 2007 Agreement, the 2007 Note, the 2007 Mortgage, the 2007 Assignment, the Forbearance Agreement, the 2009 Mortgage, the 2009 Note, the Note, the Mortgage, the Security Agreement, the Summer Camp Assignment, the Synagogue Assignment, the Financing Statements, other related documents and any amendments thereto are referred to herein as, the "Loan Documents".

17. Pursuant to the terms of the Loan Documents, the Debtor granted Presidential a security interest in and lien upon the Debtor's Cash Collateral, including all leases and rents derived from the Real Property, inventory, accounts, chattel paper, instruments, deposit accounts, and all general intangibles, together with all proceeds related thereto.

18.     The last payment made by the Debtor to Presidential was in February 2013. The Debtor is and remains in default under the Loan Documents. All obligations of the Debtor have been accelerated and are due and owing. Presidential commenced foreclosure proceedings against the Debtor, and a sale date was scheduled for Friday, July 17, 2015.

### Request for Relief

19.     The Bankruptcy Code defines cash collateral as follows:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the ***proceeds, products, offspring, rents, or profits of property*** ... ***subject to a security interest*** as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a) (emphasis added).

20.     A debtor-in-possession may not use cash collateral unless the secured creditor with an interest in such collateral consents to the use of such funds or the court authorizes the use of cash collateral in accordance with the other provisions of 11 U.S.C. § 363. *See id.* § 363(c)(2). The court may authorize the use of cash collateral if such use is conditioned on the debtor providing adequate protection to the secured creditor's interest. *See id.* § 363(e).

21.     Section 363 of the Bankruptcy Code further requires the debtor-in-possession to segregate and account for any cash collateral in the debtor's possession, custody or control. *See id.* § 363(c)(4).

22.     Pursuant to the terms of the Loan Documents, Presidential holds a security interest in and lien upon the Debtor's assets, both real and personal, together with all of the proceeds realized from the same. All of these constitute Cash Collateral and are subject to the restrictions imposed by section 363 of the Bankruptcy Code. More specifically, the Debtor is

prohibited from using such funds without the consent of Presidential or Order from this Court, and the Debtor must segregate and account for such funds.

23.     The Debtor has neither directly requested Court authority to use Presidential's Cash Collateral nor has Presidential consented to the Debtor's use of Cash Collateral. In the Debtor's first day filing, it describes its sources of revenue and cash as "donations, tuition, and membership fees" (Doc. No. 1, ¶ 5), all of which remain subject to Presidential's lien. Use of such assets and their proceeds is use of Presidential's Cash Collateral. The Debtor's prepetition uses of revenue and cash collateral appear to have left creditors unpaid. In that regard, the Debtor's management of operations must be questioned in the first instance. Presidential does <u>not</u> consent to use of its cash collateral and requests that this Court enter an Order prohibiting the Debtor from using the funds subject to Presidential's security interest and lien, segregate all cash collateral, and provide an accounting of all cash collateral in the Debtor's possession, custody or control to Presidential and this Court within fifteen (15) days after entry of an Order granting the relief herein.

24.     Presidential submits that this Motion cites the relevant statutory authority and rules for the relief requested, and that this Motion complies with Local Bankruptcy Rule 9013-1(a). Therefore, no separate memorandum of law is required in connection with this Motion.

8

Client Documents:4821-2862-3397v1|102450-000004|7/16/2015

WHEREFORE, Presidential Bank, FSB respectfully requests that this Court enter an Order (i) prohibiting the Debtor's use of cash collateral, (ii) requiring the Debtor to segregate all Cash Collateral, (iii) requiring the Debtor to account for any Cash Collateral in the Debtor's possession, custody or control and provide such accounting to Presidential and this Court within fifteen (15) days after entry of an Order granting the relief herein, and (iv) granting such other and further relief as is just and proper in this case.

Dated: July 20, 2015
       Baltimore, Maryland       Respectfully submitted,

      /s/ Joel L. Perrell, Jr., Esquire
Joel L. Perrell, Jr., Esquire
Kristen M. Siracusa, Esquire
MILES & STOCKBRIDGE P.C.
100 Light Street, 10th Floor
Baltimore, MD  21202
(410) 385-3762 (Phone)
(410) 698-1343 (Fax)
jperrell@milesstockbridge.com (Email)
ksiracusa@milesstockbridge.com (Email)

*Counsel to Presidential Bank, FSB*

# CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 20th day of July, 2015, I caused a true and correct copy of the foregoing *MOTION OF PRESIDENTIAL BANK, FSB FOR AN ORDER PROHIBITING DEBTOR'S UNAUTHORIZED USE OF CASH COLLATERAL* with exhibits and proposed order to be served via overnight mail, next day delivery, upon the following:

Leo Fox
630 Third Avenue, 18th Floor
New York, NY 10017
*Counsel to the Debtor*

U.S. Trustee
Office of the United States Trustee
Eastern District of NY (Brooklyn Office)
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014

*Chambers copy provided to:*

Hon. Nancy Hershey Lord
U.S. Bankruptcy Court, EDNY
Conrad B. Duberstein Courthouse
271-C Cadman Plaza East - Suite 1595
Brooklyn, NY 11201-1800

Dated: July 20, 2015                                                         */s/ Kristen M. Siracusa*
                                                                                                             Kristen M. Siracusa