MILES & STOCKBRIDGE P.C.
Joel L. Perrell Jr., Esq.
Kristen M. Siracusa, Esq.
100 Light Street
Baltimore, Maryland 21202
Tel: (410) 727-6464
Fax: (410) 385-3700
jperrell@milesstockbridge.com
ksiracusa@milesstockbridge.com

*Attorneys for Presidential Bank, FSB*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

In re:

BNOIS SPINKA,

        Debtor.

Chapter 11

Case No.: 15-43251 (NHL)

-----------------------------------------------------------x

**OBJECTION OF PRESIDENTIAL BANK, FSB TO APPLICATION IN SUPPORT OF DEBTOR'S TEMPORARY AND FINAL USE OF CASH COLLATERAL**

Presidential Bank, FSB ("Presidential") by and through its undersigned counsel, hereby objects to the Debtor Bnois Spinka's (the "Debtor") Application in Support of its Temporary and Final Use of Cash Collateral (Doc. No. 17) (the "Cash Collateral Motion"). Presidential incorporates herein by reference, as if stated fully herein, its Motion for an Order Prohibiting Debtor's Unauthorized Use of Cash Collateral filed July 20, 2015 (the "Motion to Prohibit Use of Cash Collateral") (Doc. No. 9). In support of this objection, Presidential states as follows:

1. As set forth in more detail in the Motion to Prohibit Use of Cash Collateral, it was not until the filing of the instant bankruptcy case that Presidential gained insight into the Debtor's financial turmoil. Since the Petition Date, the Debtor has submitted various iterations of profit & loss statements on behalf of the Debtor, Debtor-related entities and/or operations of the Debtor to Presidential, to creditors and the Court in connection with the bankruptcy filing and in

support of its various first day motions. Specifically, the Debtor has provided multiple versions of budgets covering the 30-day period from July 15, 2015 through August 15, 2015 (the "30-Day Period") for "Bnois Spinka", "Yeshiva Nachlas Zvi D'krula- Camp Account" (the "Camp Account"), "Cong ZSZ krula" ("Cong. Krula"), "Bnois Spinka girls portion" (the "Girls School"), and "Bnois Spinka-Kent Ave" (the "Boys School"). The information contained in these various iterations is inconsistent and unreliable. As a result, Presidential cannot consent to the Debtor's use of its Cash Collateral.

*The Debtor's Initial Profit & Loss Statements (Voluntary Petition and "First Day" Filings)*

2. The first document filed with the Court, the Debtor's Voluntary Petition (Doc. No. 1) contains a Profit & Loss Forecast for "Bnois Spinka". That statement, dated July 15, 2015, forecasts income of $175,459.03, expenses of $170,821.62, leaving a total *positive* net income of $4,637.41 for the Debtor's operations for 30 days. A true and correct copy thereof is attached hereto as **Exhibit A**.

3. On July 21, 2015, the Debtor filed its Cash Collateral Motion (Doc. No. 17). Attached as Exhibit A thereto, the Debtor provided a Profit and Loss Forecast dated July 15, 2015 for the Camp Account. This statement forecasts a total income of $134,500 (although the document states total income of $244,206.00 in error)[1], expenses of $220,465.00, equal to a forecasted net *negative* net income of $85,965 (although the document erroneously reflects a positive net income of $23,741.00).

4. The Debtor provided a forecast for Cong. Krula dated "July – 2015" as Exhibit B to the Cash Collateral Motion, which statement provides forecasted total income of $18,950.00, expenses of $38,550.00, leaving *negative* net income of $19,600.00.

---

[1] As to the amounts comprising the total income of $244,206.00, the Debtor lists Tuition income of $55,000 and Programs Income totaling $79,500.00. These two amounts total $134,500.00, not $244,206.00.

5.      The Debtor provided a Profit & Loss Forecast dated July 15, 2015 for the Girls School as Exhibit C to the Cash Collateral Motion, forecasting a total income of $47,710.00, expenses of $49,900.00, leaving a *negative* net income of $2,190.00.

6.      On July 24, 2015, the Debtor provided a Profit & Loss Forecast for the Boys School forecasting a total income of $193,999.03, expenses of $123,276.00, leaving a *positive* net income of $70,723.03.  True and correct copies of the foregoing statements are attached hereto as **Exhibit B**.

*The Varying Proposed Cash Collateral Budgets*

7.      On July 30, 2015 (yesterday), the Debtor proposed cash collateral budgets for the Camp Account, Congr. Krula, the Girls School, and the Boys School.  There were no changes made to the Congr. Krula budget from the previous version, however, there were changes to the remaining three budgets—some material.  True and correct copies of the cash collateral budgets for the Camp Account, Congr. Krula, the Girls School and the Boys School are attached hereto as **Exhibit C.**

8.      The new Profit & Loss Forecast for the Boys School projects total income of $121,749.00, expenses of $123,276.00, leaving a *negative* net income of $1,527.00.  As noted above, the prior statement provided by the Debtor -- only 6 days earlier – projected total income of $193,999.03, expenses of $123,276.00, leaving a *positive* net income of $70,723.03.  This discrepancy between the two versions (only days apart) exceeds $72,000.

9.      The new Profit & Loss Forecast for the Camp Account, also dated the same date as the prior version, forecasts total income of $171,490.00, expenses of $220,465.00, leaving a *negative* net income of $48,975.00.  The amounts comprising the total income in this new version include a Cash Operating Account containing $5,452.00, Cash Lunch Account of

$105,166.00, Tuition of $55,000, Lunch Programs Income of $111,990.00 and Donations of $4,500.00. These amounts actually total $282,108.00 <u>not</u> $171,490.00. Thus, the total net income should reflect projected *positive* net income of $61,643 based on the Debtor's own numbers. By contract, the prior version of this statement forecasted total income of $134,500 (although the document erroneously states $244,206)[2], expenses of $220,465.00, leaving a net *negative* income of $85,965. <u>The actual discrepancy between the old and new version is $147,608</u>.

10. Finally, the new Profit & Loss Forecast for the Girls School (also dated July 15, 2015) projects total income of $50,717.00, expenses of $52,900.00, leaving a *negative* net income of $2,183.00. The prior statement projected total income of $47,710.00, expenses of $49,900.00, leaving a *negative* net income of $2,190.00. Presidential submits that the change is immaterial and reflects the proper accounting for the T-Mobile lease that the Debtor previously omitted.

11. Further, the Debtor has represented that the Boys School and Girls School comprise the Debtor's total operation and that the other two entities (namely, the Summer Camp in Fallsburgh and the Synagogue on Wallabout Avenue) are run separately. It follows, that the cash collateral budgets provided for the Boys School and the Girls School, when combined, should be consistent with the budget filed with the Voluntary Petition for Bnois Spinka (Exhibit A attached hereto). However, the numbers simply do not add up – regardless of what version (new or old) the Court examines.

12. Presidential has no confidence that the budget provided it in connection with the use of Cash Collateral is accurate, reliable or achievable. In many cases, such a lack of accurate

---

[2] As to the amounts comprising the total income of $244,206.00 the Debtor lists Tuition income of $55,000 and Programs Income totaling $79,500.00. These two amounts total $134,500.00, not $244,206.00.

and reliable financial disclosures forms the basis for creditors to seek appointment of a Chapter 11 Trustee.

13. Presidential attempted to negotiate with the Debtor in good faith to obtain a consensual resolution to the Motion to Use Cash Collateral; however, the parties were not able to agree on a consensual form of order in part due to the ever changing financial disclosures of the Debtor and its affiliates.

WHEREFORE, Presidential Bank, FSB respectfully requests that this Court enter an Order (i) denying the Cash Collateral Motion, (ii) prohibiting the Debtor's use of cash collateral, (iii) requiring the Debtor to segregate all Cash Collateral, (iv) requiring the Debtor to account for any Cash Collateral in the Debtor's possession, custody or control and provide such accounting to Presidential and this Court within fifteen (15) days after entry of an Order granting the relief herein, and (v) granting such other and further relief as is just and proper in this case.

Dated: Baltimore, Maryland
July 31, 2015

Respectfully submitted,

  */s/ Joel L. Perrell, Jr., Esquire*  
Joel L. Perrell, Jr., Esquire
Kristen M. Siracusa, Esquire
MILES & STOCKBRIDGE P.C.
100 Light Street, 10th Floor
Baltimore, MD  21202
(410) 385-3762 (Phone)
(410) 698-1343 (Fax)
jperrell@milesstockbridge.com (Email)
ksiracusa@milesstockbridge.com (Email)

*Counsel to Presidential Bank, FSB*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of July, 2015, I caused a true and correct copy of the foregoing *OBJECTION OF PRESIDENTIAL BANK, FSB TO APPLICATION IN SUPPORT OF DEBTOR'S TEMPORARY AND FINAL USE OF CASH COLLATERAL* to be served via this Court's CM/ECF system and overnight mail, next day delivery (by 10:30 a.m. EST), upon the following:

Leo Fox
630 Third Avenue, 18th Floor
New York, NY 10017
*Counsel to the Debtor*

U.S. Trustee
Office of the United States Trustee
Eastern District of NY (Brooklyn Office)
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014

*Chambers copy provided to:*

Hon. Nancy Hershey Lord
U.S. Bankruptcy Court, EDNY
Conrad B. Duberstein Courthouse
271-C Cadman Plaza East - Suite 1595
Brooklyn, NY 11201-1800


Dated: Baltimore, Maryland
　　　　July 31, 2015                                              */s/ Kristen M. Siracusa*
                                                                   Kristen M. Siracusa