| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK | HEARING DATE: December 16, 2015<br>HEARING TIME: 3:00 p.m. |
|---|---|

-------------------------------------------------- x
In re:                                             :
                                                   :  Case No. 15-43251 (NHL)
BNOIS SPINKA,                                      :
                                                   :  (Chapter 11)
                                 Debtor.     :
-------------------------------------------------- x

**UNITED STATES TRUSTEE'S OBJECTION TO THE APPLICATION TO ALLOW CONGREGATION KRULA TO OPERATE DEBTOR'S TRANSPORTATION SYSTEM**

William K. Harrington, United States Trustee for Region 2 (the "United States Trustee"), hereby files his objection (the "Objection") to the Application to Allow Congregation Krula to Operate Debtor's Transportation System (the "Application"). For the Objection, the United States Trustee respectfully states as follows:

**I.    INTRODUCTION**

The Debtor filed the Application on November 23, 2015, on 7 days' notice of presentment, seeking approval of a contract with Congregation Krula to provide bus services for students attending the Debtor's schools. The Debtor has cited no statutory basis or legal authority in support of the relief sought, which is a procedural deficiency that the Debtor must cure. Assuming that 11 U.S.C. § 363 governs approval of the contract, the Debtor not met its burden of proof under Section 363(b) or provided proper notice under the Federal and Local Bankruptcy Rules. The Debtor has not presented any evidence that entering into the contract is a sound exercise of its business judgment, as required under Section 363(b), and instead relies solely on the argument in the Application. In addition, the Debtor has failed to give proper notice of the Application. Rather than giving creditors and parties affected by entry of an order at least 21 days' notice of the Application, as required under Federal Rule of Bankruptcy Procedure 2002(a)(2) and E.D.N.Y. Local Rule 2002-1(d), the Debtor gave just 7 days' notice to

a few of its creditors. Even after the Court set a hearing on the Application for December 16, 2015, which cured the timing deficiency, the Debtor failed to serve any creditors with notice of the hearing. Therefore, the Court should deny the Application or direct the Debtor to file an amended motion, on proper notice, that cures all of the deficiencies in the Application.

## II.    FACTS

### A.    The Debtor

The Debtor filed a chapter 11 petition on July 16, 2015 (the "Petition Date"). ECF Doc. No. 1. The United States Trustee has not appointed a chapter 11 trustee under 11 U.S.C. § 1104, and the Debtor has remained in possession of its assets and continued to manage its business since the Petition Date. The United States Trustee held an organizational meeting and appointed a committee of unsecured creditors on December 4, 2015. ECF Doc. No. 129.

The Debtor is a charitable, non-profit organization that owns and operates schools and summer camps for its members. Application, ¶ 2. The Debtor is affiliated with the Krula Hasadic Jewish sect, through Cong. Khal Zichron Shmiel Zvi D'Krula ("Congregation Krula") and Yeshiva Nachlas Tzvi D'Krula. *Id*.

The Debtor owns three parcels of real property: (1) 127 Wallabout Street, Brooklyn, New York (the "Wallabout Property"), the site of a synagogue and a girls' school; (2) 795 Kent Avenue, Brooklyn, New York (the "Kent Property"), where there is a boy's school; and (3) 5405 Route 42, South Fallsburgh, New York (the "Fallsburgh Property), which is used as a summer camp. Declaration Pursuant to Local Rule 1007 ("E.D.N.Y. LBR 1007-1 Declaration"), ¶ 3. ECF Doc. No. 1. The Kent Property is encumbered by a $3 million mortgage held by Cornell Management and a $1.5 million real property tax lien. Schedule D, filed on September 3, 2015, ECF Doc. No. 80. Presidential Bank FSB ("Presidential") holds a mortgage of $3.97 million,

which encumbers the Fallsburgh Property and the Wallabout Property. *Id*. Quality Builders holds a construction lien against the Fallsburg Property in the amount of $925.000.00. *Id.*

Starting in September 2008, the Debtor was unable to make regular monthly mortgage payments to Presidential, and they entered into a forbearance agreement, which required the Debtor to resume monthly payments. E.D.N.Y LBR 1007-1 Declaration, ¶¶ 6-7. In late 2012, the Debtor defaulted on its obligations to Presidential, because of expenses associated with Hurricane Sandy and a real property tax dispute with the Town of Fallsburgh. *Id*., ¶¶ 7-8. As a result, in June 2013, Presidential filed a foreclosure action against the Debtor and obtained a foreclosure judgment in February 2015. *Id.* During the foreclosure and after entry of the foreclosure judgment, Presidential and the Debtor were in settlement negotiations, which ultimately failed. *Id*., ¶ 10. Presidential noticed a foreclosure sale for July 17, 2015, but the sale was stayed when the Debtor filed its chapter 11 case on July 16, 2015. *Id*.

After the Petition Date, Presidential filed a motion to prohibit the use of cash collateral on July 20, 2015. ECF Doc. No. 9. The Debtor filed a motion for interim and final use of cash collateral on July 21, 2015. ECF Doc. No. 17. The court held a hearing on the emergency use cash collateral on July 22, 2015. ECF Doc. No. 18. On August 1, 2015, the court entered an order approving the emergency use of cash collateral and thereafter entered interim cash collateral orders on August 12 and 18, October 6 and 29, and December 8, 2015. ECF Doc. Nos. 35, 75, 91, 104, and 131. Pursuant to the order entered on December 8, 2015, the Debtor's authority to use cash collateral will expire on January 4, 2015. ECF Doc. No. 131.

On December 8, 2015, the Debtor filed a disclosure statement and plan. ECF Doc. Nos. 133-134. The hearing on the disclosure statement is set for January 4, 2016, at 2:00 p.m. ECF Doc. No. 135.

### B.      The Application

The Debtor filed the Application on notice of presentment on November 23, 2015, with an objection date of November 30, 2015. ECF Doc. No. 122. In the Application, the Debtor seeks authority to enter into a contract that would allow Congregation Krula to operate the Debtor's transportation system. Application, ¶ 6. On November 24, 2015, the court set a hearing on the Application for December 16, 2015, at 3:00 p.m. Although the Debtor claimed that the agreement is in writing, it did not file a written agreement with the Application. On December 9, 2015, the Debtor served the United States Trustee with a copy of a contract (the "Transportation Contract" or the "Contract") with Congregation Krula. To date, however, the Debtor has not filed the Transportation Contract in the case, and a copy of the Transportation Contract is attached to this Objection as Exhibit 1.

Under the Transportation Contract, Congregation Krula is to provide vehicles and drivers to transport students at a cost of $1,800.00 per student, or $612,000.00 per year, for 340 students, to be billed monthly. Transportation Contract, at 1, ¶ 2. Among other things, the Contract requires Congregation Krula to carry insurance with limits of no less than $1 million per combined single limit and to indemnify the Debtor against any legal proceedings, costs, damages, or loss arising from performance of the Contract. *Id*., ¶¶ 3-4.

In the Application, the Debtor states that it has encountered difficulties in continuing to operate school buses for the students at its schools. Application, ¶ 5. The Debtor claims that it operates seven buses at a cost of $108,000.00 each ($756,000.00 in all), including payroll for the drivers and maintenance, administration, gas, and maintenance. *Id*. Because three of the Debtor's buses are inoperable, it states that it has to lease buses at a cost of $9,000.00 per month, excluding costs for dispatching, site management, parking and other expenses. *Id*. The Debtor

states that the Transportation Contract will save the Debtor in excess of $144,000.00 in operational costs per year, *id*. at 6, and that "savings increase when taking into account the costs saved from eliminating insurance, maintenance, payroll, and gas expenditures." *Id*., ¶ 7.

## III.  ARGUMENT

### A.  The Debtor Has Cited No Statutory Basis or Legal Authority in Support of the Relief Sought.

Under the local rules of this Court,

> A motion shall be in writing . . . and shall specify the rules and statutory provisions upon which it is based and legal authorities that support the requested relief . . . and the factual grounds for relief.  Failure to provide this information may be grounds to strike the motion from the calendar or deny the motion.

E.D.N.Y. LBR 9013-1(a).  *See also In re Pearlman*, 20 B.R. 274, 275 (Bankr. W.D. Kentucky 1982) (a motion filed without citing the statutory basis and legal authority governing the matter is procedurally deficient).  The Debtor has failed to cite any provisions of the Bankruptcy Code or legal authority in support of the Application.  Because the Debtor has not demonstrated a legal basis for the relief sought, the Court should deny the Application or direct the Debtor to cure the deficiencies in an amended motion.

### B.  Presuming that Approval of the Transportation Contract is Governed by 11 U.S.C. § 363(b), the Debtor Has Not Shown that there is a Sound Business Justification for Entering into the Contract or that Notice of the Application Was Proper.

#### 1.  The Debtor Has Not Presented Any Evidence that Entering into the Transportation Contract is a Sound Exercise of its Business Judgment.

Title 11 U.S.C. § 363 provides, in part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). To prevail on a Section 363 motion, "there must be some articulated business justification . . . for using, selling, or leasing property out of the ordinary course of business before the bankruptcy judge may order such a disposition under section 363(b)." *1070 Committee of Equity Security Holders v. Lionel Corp. (In re the Lionel Corporation)*, 722 F.2d 1062 (2d Cir. 1983).  A debtor "must support [a request for authority to use estate property out of the ordinary course of

5

business] with evidence – usually in the form of a declaration or affidavit – demonstrating that the . . . contract falls within the proper exercise of [the debtor's] business judgment." *In re Genco Shipping and Trading Limited*, 509 B.R. 455, 463 (Bankr. S.D.N.Y. 2014) (citation omitted). The Court "determining a § 363(b) application must expressly find from the evidence presented . . . a good business reason to grant such an application." *Lionel*, 722 F.2d at 1071. The debtor must also show that "proper notice was given to all creditors and interested parties; (ii) the proposed sale price is fair and reasonable; and (iii) the purchaser is proceeding in good faith." *In re Boston Generating, LLC*, 440 B.R. 302, 330 (Bankr. S.D.N.Y. 2010)."The need for expedition, however, is not a justification for abandoning proper standards." *Protective Committee for Independent Stockholders of TMT Trailor Ferry v. Anderson*, 390 U.S. 414, 450 (1968).

      Here, the Debtor has failed to demonstrate any business justification for entering into the Transportation Contract. The Debtor states in the Application that the Transportation Contract will save money, but this contention is not supported by an affidavit, declaration, or other evidence. The representations as to cost savings in the Application are contradictory and confusing and underscore the need for documentary evidence and testimony. For example, the Debtor states it costs $108,000.00 to operate each of its 7 school buses, "when bus driver and maintenance payroll, administration, gas, auto maintenance, etc. is all taken into account." Application, ¶ 5. One paragraph later, however, the Debtor states that savings will increase "when taking into account eliminating insurance, maintenance, payroll for the drivers and maintenance personnel, and gas expenditures." *Id.* ¶ 6.

      The Debtor apparently thinks that there is some urgency to obtain Court approval of the Transportation Contract in light of its attempt to obtain relief on seven days' notice of

presentment. However, any necessity to act expeditiously does not relieve the Debtor of its duty to meet the burden of proof under Section 363(b). *See Boston Generating*, 440 B.R. at 330 (the need for expedition is not a reason to abandon proper standards). The Court should deny the Application or direct the Debtor to file an amended motion curing this deficiency.

### 2. The Debtor Has Failed to Give Proper Notice of Application.

Under Federal Rule of Bankruptcy Procedure 2002,

> the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail of . . . a proposed use, sale, or lease of property of the estate other than in the ordinary course of business.

Fed. R. Bankr. P. 2002(a)(2).

In addition, the E.D.N.Y. Local Bankruptcy Rules require movants to give "at least 21 days' notice of the date set for the proposed action or the presentment of the proposed order." E.D.N.Y. LBR 2002-1(c). Local Rule 2002-1 also requires movants to serve notice on parties that would be affected by the proposed order in addition to the notice parties set forth in Federal Rule of Bankruptcy Procedure 2002. E.D.N.Y. LBR 2002-1(d).

In this case, the Debtor filed the Application on November 23, 2015, with a presentment date of November 30, 2015, which is well short of the 21-day requirement. ECF Doc. No. 122 and 123. The Court itself cured this deficiency by scheduling a hearing on the Application for December 16, 2015, which is 23 days after the date the Debtor filed the Application, in compliance with Bankruptcy Rule 2002(a)(2) and E.D.N.Y. LBR 2002-1(c). However, it appears that the Debtor did not initially serve the Application on all creditors and parties affected by the proposed order, as required under Federal Rule of Bankruptcy Procedure 2002(a)(2) and E.D.N.Y. LBR 2002-1(c), and there is no indication that the Debtor gave anyone notice of the December 16, 2015 hearing. The Debtor filed a creditor matrix 11 pages long, which listed approximately 90 creditors. ECF Doc. No. 21. The Affidavit of Service of the Application shows service on only about 30 creditors. ECF Doc. No. 124. Likewise, there is no indication on the docket that the Debtor gave any party in interest notice of the December 16, 2015 hearing. The Court

7

should deny the Application on this basis or direct the Debtor to give proper notice of any amended motion it files.

## IV. CONCLUSION

Based on the foregoing, the United States Trustee respectfully requests that the Court deny the Application or direct the Debtor to file an amended motion, on proper notice, that cures all deficiencies in the Application.

Dated:  Brooklyn, New York
            December 10, 2015.

                                        WILLIAM K. HARRINGTON
                                      UNITED STATES TRUSTEE, REGION 2

By: */s/ Alicia M. Leonhard*
     Alicia M. Leonhard (al-9928)
     Assistant United States Trustee
     271 Cadman Plaza East, Suite 4529
     Brooklyn, New York 11201
     Phone: 718-422-4960
     Facsimile: 718.422.4990
     Email: Alicia.M.Leonhard@usdoj.gov

# TRANSPORTATION CONTRACT ("CONTRACT")
# BETWEEN 0043ONG. KHAL ZICHRON TZVI D'KRULA ("CONTRACTOR")
# AND BNOIS SPINKA ("SCHOOL") DATED DECEMBER __, 2015

WHEREAS, Contractor is prepared to provide transportation services to the students of the School, and the School has agreed to accept such transportation services, it is agreed as follows:

1. The Contractor shall provide vehicles for the transporting of students and drivers for the vehicles that are in compliance with all the requirements of local, state, and federal laws. The contractor will be responsible for all repairs, maintenance and other supplies for the vehicles.

2. The cost of these services is $1,800 per student per year calculated at $612,000 per year at 340 students. Payments for these services shall be billed monthly and shall be paid within 30 days of receipt of the bills.

3. The Contractor shall carry insurance with a carrier acceptable to the School and to the Board of Education, if applicable, no less than one million dollars per CSL (combined single limit). The School shall be named as an additional insured and copies of the insurance policy shall be supplied the School. Policies shall not be cancellable with less than 30 days' notice being given to the District. The insurance carrier shall have an "A" rating or better in the Best Guide.

4. The Contractor shall agree to indemnify, save harmless and defend the School and its members, employees and agents, against all suits, actions, legal proceedings, claims and demands, and against all damages, loss, costs, expenses and attorney's fees in any manner caused by, arising from, incident to, connected with or growing out of the performance of the Contract.

5. The Contractor and its drivers are to maintain discipline. Repeated infractions of cases of gross disobedience must be reported to the principal of the building to which the student is assigned.

6. The Contractor shall assign vehicles with two-way radios to operate within the neighborhood of the School. Citizen band radios are not acceptable.

7. The contractor shall provide buses with up to date safety technology such as rear backup cameras and dual doors.

8. The Contractor shall keep accurate records of miles driven, number of students transported, and any other information required by the School and, if applicable, the Board of Education, to substantiate State Aid claim for transportation, and that such information shall be submitted to the School as requested on a punctual basis.

9. Special Event Busing: Sports-Field Trips. These trips are to be arranged through the office

of the Director of Staff and Student Services. A record to time and miles must be submitted with invoice.

10. Billing for transportation shall be based on the School's official attendance records; records shall be maintained for inspection by the School and the Contractor to support any charges.

11. The School reserves the right to make decisions regarding the transportation of students during severe weather conditions.

12. Routing is to be performed by contractor with the cooperation of the School personnel.

13. Contractor shall make routing or schedule changes as indicated by the School personnel, and shall implement them within 7 working days after notice is provided of such changes.

14. Scheduling of arrivals and departures of the bus from the various School locations shall conform with attendance center calendars, timetables, and the allowable time flexibilities.

15. The School shall inform parents of the necessity to have their student/students ready to be transported and to avoid any unnecessary delays which would cause disruption of timely service schedules.

16. Each attendance center shall be prepared to assist in loading or unloading of students to expedite a timely transportation program.

17. The School shall be responsible for informing all parents of scheduled pick-ups and returns. The contractor shall maintain a consistent schedule in this regard.

18. Students shall be picked up and delivered as prescribed by the School, and the codes provided by the Public School District in which the School is located.

19. No unauthorized person shall be allowed in any vehicle while engaged in transporting students; however, the School reserves the right to have an authorized employee ride on any bus, or any contracted route to assist the driver, or to observe the operating conditions of the transportation program.

20. Prior to commencement of this Contract, the Contractor will provide the School with a tentative schedule for each bus route.

21. Changes in place for pick-up or drop-off for any student shall only occur with the approval of the School.

22. Arrival time at assigned School should not exceed 10 minutes before starting or exceed 15 minutes for return at dismissal.

23. Drivers should make every effort to maintain discipline on any transportation vehicle and should report disciplinary incidents to their supervisor who will in turn contact the proper School official.

24. Final authority on disciplinary problems shall rest with the School.

25. Drivers are expected to follow all instructions, rules and regulations for proper discipline and safe operation of buses as outlined by the School and the School Bus Driver Instructional Guide.

26. Contractor shall be highly selective in the hiring of drivers. They should be persons of ability, character, integrity, and fitness, and who are acceptable to the School.

27. The School reserves the right to require the removal or transfer of any driver.

28. All drivers must participate in an orientation session scheduled and conducted on an annual basis by the School and shall attend whatever institutes, classes, or seminars that are required by the School, and, if applicable, the State Board of Education.

29. The contractor and the School district shall identify channels of communication.

30. General procedures will be arranged with Contractor before Contract is finalized.

31. This Contract shall be based on 6 days student attendance.

32. Bus route numbers are to be displayed in right front and side windshields in bold numerals, at least 4 inches high, or in electrically lighted numerals at least 3.5 inches high.

33. Contractor shall submit a brief description of the equipment which he or she proposes to use in carrying out the Contract.

34. Should an accident ever occur, the Contractor will immediately notify the School, Central Office Administration giving all information known at the time. The School shall reserve the right to inspect any vehicle involved in any accident to determine if it is safe to be used in transporting students. If there is any question of safety, the School also reserves the right to have that vehicle eliminated from further service pending an inspection by a mechanic or safety expert chosen by the School, cost to be borne by the School and, if applicable, the Board of Education.

35. Rules and regulations regarding bus passenger discipline shall be given to each student and to the Contractor by the School.

All violations of passenger discipline shall be reported:

    (a) First to the principal or his or her designate of the School;

    (b) Second, to the Director of Staff and Student Services; and

    (c) Third, to the Contractor.

To assure proper and expedient handling of disciplinary problems, violations of passenger discipline should be reported to all parties mentioned above within 3 hours.

36. Claims for payment shall be submitted to the School on a monthly basis. Dates for submission of invoices will be detailed in the Contract.

37. Should an act of vandalism occur on the bus, the transportation company shall fix or repair all damage as quickly as possible. The School shall assist, as much as legally possible, in helping the transportation company obtain restitution from persons guilty of causing vandalism should they be students of the School.

38. The Contractor shall provide dispatcher personnel available to the School between the hours of 7:30 a.m. and 6:00 p.m. every day the School is in session.

39. In the event that a strike or other reason causes interruption of service for more than 4 hours, the School shall have the right to secure such other transportation as may be necessary and charge the cost of it to the account of the Contractor.

40. The name and address of the manager, and a statement that the manager shall have complete authority with respect to all matters relating to the performance of this Contract, shall be submitted to the School at the execution of a Contract.

41. It is unacceptable for the Contractor to subcontract any portion of the routes to other contractors.

42. Contractor shall clean and sweep each bus each day, and at least weekly with a disinfectant. Contractor shall furnish the School with an approved Certificate of Medical Examination for each driver.

43. The Contractor shall make such reports as may be required by the School, the State Department of Public Instruction, County Board of Education, and Superintendent of Schools.

44. The bus shall be used only for transporting regularly enrolled students to and from school and to extracurricular activities approved and designated by the School.

45. The Contractor shall obtain, if possible, the licenses of all cars violating the School bus passing law and file such information for prosecution.

46. The use of alcoholic beverages or immoral conduct by any driver shall automatically cancel this Contract.

47. The School shall reserve the right to have full access to security footage of the vehicles at any time.

48. The school expects to receive the same level of service provided to others such as government sponsored students. If allowed by government same vehicles can be used to other clients as long as they are student from our school and are transported to our school at that time.

49. The Contract shall commence on the approval of the Bankruptcy Court to this Contract, and the signing of the Contract by the parties.

50. This Contract shall be for a period of one year renewable automatically unless prior to the annual date for renewal, the Contract is terminated by either party on 90 days notice.

51. The Contractor agrees that in the event the Contract is terminated for any cause or is not renewed, the Contractor shall sell its school bus to the School at their request, at a price which shall be determined by agreement or upon an arbitration under the Rules of the American Arbitration Association or the Rules of a Bes Din, under the governing principles promulgated by the CRC Bes Din.

AGREED TO:

BNOIS SPINKA ("SCHOOL")            CONG. KHAL ZICHRON TZVI D'KRULA
                                   ("CONTRACTOR")


By:  _____        By:  _____